upon her direct examination. The sole effect of this testimony was to inflame the jury against the defendant, and to cause them to view with suspicion the defense which he sought to establish of a discharge of the plaintiff for cause, unaccompanied by any assault whatever by him upon her, in which he was corroborated by the testimony of his wife that she had been the one who had pushed plaintiff out of the hotel office when she made a scene after her discharge, and that the defendant had no part whatever therein.

[2] The learned court refused to charge that the jury could, in no event, award plaintiff damages, punitive or otherwise, for the alleged occurrences on the morning of July 14th, and his refusal so to charge in the face of the acceptance of the testimony constituted reversible error, entitling the defendant to a new trial.

For that reason, as well as for the receipt of the improper evidence referred to, the judgment and order appealed from will be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.

---

(157 App. Div. 165.)

PEOPLE ex rel. QUEENS COUNTY WATER CO. v. STATE BOARD OF TAX COM'RS (CITY OF NEW YORK, Intervener).

(Supreme Court, Appellate Division, Third Department. May 22, 1913.)

1. TAXATION (§ 376*)—ASSESSMENT OF SPECIAL FRANCHISE—METHODS.

In the assessment of a special franchise there is no hard and fast rule by which assessors are bound in fixing the value, and, while in some cases the net-earnings rule is a convenient and fair way of determining value, in other cases it would not be.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

2. TAXATION (§ 493*)—REVIEW OF ASSESSMENTS—PRESUMPTION AND BURDEN OF PROOF.

In reviewing the action of the tax board in making an assessment, the presumption is that in some way the board has arrived at a fair result, and the burden is on the party claiming to be aggrieved to satisfy the court that the assessment is unjust; and whether the board acted upon sufficient data or not is immaterial if the result is just.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 876–883; Dec. Dig. § 493.*]

3. TAXATION (§ 376*)—ASSESSMENT—NET-EARNINGS RULE—FAIR RETURN ON VALUE.

In valuing the property of a water company by the net-earnings rule, the physical property both in and out of the street, including pumps, engines, and pipes employed in performing a contract with the city, is to be accorded a fair return upon its value before any value is attributed to the intangible part of the special franchise.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

4. TAXATION (§ 376*)—ASSESSMENT OF FRANCHISE—EARNINGS AFTER ASSESSMENT.

In fixing the value of the franchise of a water company, the Board of Tax Commissioners was not confined to its earnings prior to the assessment, but might consider its receipts under a contract, by which, prior to the date of assessment, the company began to furnish water to a city,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

. although compensation therefor was not then due, but was received during the year, and to determine how much of the amount received was actual profits.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631.; Dec. Dig. § 376.*]

5. TAXATION (§ 376*)—BOARD OF TAX COMMISSIONERS—POWER.
Under the law creating the Board of Tax Commissioners, the duty of the board as to the business of a water company is solely to determine the value of its property as a going concern.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

6. TAXATION (§ 376*)—ASSESSMENT—VALUE OF PHYSICAL PROPERTY—LAND PURCHASED BY WATER COMPANY.
Lands purchased by a water company from time to time, aggregating 435 acres valued at $347,000, acquired in good faith under the advice of its engineers and to secure a proper drainage area which would place its supply beyond liability of failure, prevent others from interfering with it, and provide for the probable future needs of the company, should be allowed as a part of the value of its physical property in determining the return to be received therefrom.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

7. TAXATION (§ 376*)—ASSESSMENT—VALUE OF PHYSICAL PROPERTY—EXPENSE OF PROTECTION.
Expenses of a water company for the protection of its water supply and to keep its land from becoming unsightly and detrimental to its interest should be allowed in assessment as an expense of its business.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

8. TAXATION (§ 376*)—DETERMINATION OF NET PROCEEDS—UNPAID TAXES.
In determining the net profits of a water company for the year 1904 as a basis of assessment for the succeeding year, taxes levied for that year were not to be disallowed because not then paid.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

9. TAXATION (§ 376*)—ASSESSMENT OF WATER COMPANY—REPRODUCTIVE COST —ITEMS.
In determining the reproduction cost of laying the pipes of a water company in streets paved after the pipes were laid, the cost of relaying the pavement was allowable as a part of the reproduction value, the fact that it cost the company nothing being immaterial; and the cost of engineering and supervision was also an item necessary for consideration.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

Appeal from Special Term, Albany County.

Action by the People, on the relation of Queens County Water Company, against the State Board of Tax Commissioners; City of New York, intervener. From an order at Special Term reviewing the special franchise tax assessed against the relator for the year 1905, relator and City of New York, intervener, appeal. Reversed, and the determination of Tax Commissioners annulled and the matter remitted to them for further consideration.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Thomas Carmody, Atty. Gen., for appellant State Board of Tax Com'rs.

Archibald R. Watson, Corp. Counsel, of New York City (Addison B. Scoville, of New York City, of counsel), for appellant City of New York.

Lord, Day & Lord, of New York City (Henry De Forest Baldwin, of New York City, of counsel), for respondent.

JOHN M. KELLOGG, J. The State Board of Tax Commissioners assessed the relator's special franchise at $190,000. The Special Term found the tangible property in the street was worth $129,190.67 and that the intangible part of the franchise was without value. Equalizing the assessment with that of other property in the tax district, which is assessed at only about 60 per cent. of its value, made it $75,114.90. The court finds the reproductive cost of the tangible property $711,422.75, and that the actual net earnings of the previous year were $31,732.98, which did not give a fair return upon such cost.

[1] The assessment of a special franchise is an effort by fair-minded men to arrive at the value of the property so that it may bear its just proportion of taxation. There is no hard and fast rule by which assessors are bound in fixing the value of property. In many cases the net-earnings rule is a convenient and fair way of determining value; in other cases it would not bring about a fair result. We do not know what rule the board followed. It may have considered various rules and methods; we have only the result. From the value of the tangible part of the franchise, as the court finds it, we infer, as the referee did, that the board valued the intangible part of such franchise at $64,809.33.

It must be conceded that for the year 1904, and prior years, the business had not been profitable, and had not earned a fair return upon the value found, and any assessment against the relator on account of the value of the intangible part of the special franchise would have been unjust. In August, 1904, the relator made a contract with the city of New York by which it was to lay a new conduit to connect its water system with the pipes of the city, and was to furnish the city 3,000,000 gallons of water per day at $30 per million gallons, subject to certain reductions and upon certain conditions. Prior to the second Monday of January, 1905, the relator began to furnish water under this contract, but no compensation had become due thereon; during 1905 it received under it $32,082.

[2-4] The real contention in this case is whether the Board of Tax Commissioners, in fixing the value of the franchise, was confined to the earnings prior to the assessment or might take into consideration this contract. It is urged that the contract was somewhat of an experiment, and it was not known whether the water would be furnished for the whole year or what the result of the venture would be. And we may assume that is true. In reviewing the action of the Tax Board in making the assessment, the presumption is that in some way the board has arrived at a fair result, and the party claiming to be ag-

grieved, in order to have relief, must satisfy the court that the assessment is unjust. As a matter of fact, the board committed no error in determining that the business of the company for 1905 was to be more profitable than it had been theretofore. Whether the board acted upon sufficient data or not is not material so long as the result arrived at is just. It is true that the pipes in the street did not contribute toward earning the money paid by the city, and perhaps the money would have been earned if there had been no special franchise. But if we are to value the relator's property by the net-earnings rule, the physical property both in and out of the street is to be assessed and accorded a fair return upon its value before any value is attributed to the intangible part of the special franchise. The pumps, engines, and certain pipes were employed in earning this money, and therefore such money should properly be considered in according to the physical property a fair return on the investment. We are not at the beginning of the year trying to determine whether it would be just to allow this item as a part of the earnings, and fearing that the action may be wrong because the money may not be received. At the time of the hearing the money had been received, and it was clearly apparent that the Tax Commissioners had not misjudged the earning capacity of the system. The receipts from this contract should therefore be considered as a part of the earnings of the company. It is quite probable that the company was put to some additional expense in supplying this water to the city. The amount received evidently was not all profits, and it will be a proper subject of inquiry how much of it was actual profits.

These conclusions lead to a reversal or modification of the order. If in fairness to the parties the order could be modified, that would be the better way; but its modification in the respect indicated would not do justice between the parties. The referee made certain specific findings of fact which were approved by the Special Term; the relator has not appealed and, so far as those findings are erroneous, a modification of the judgment would be an injustice to it.

[5, 6] The relator purchased from time to time 435.533 acres of land of the value of $347,707, as the referee properly finds, "for the purpose of its water business and the operations of its franchise, and all its land was purchased, and all of its improvements were constructed for such purposes, pursuant to the advice of engineers." The referee felt constrained by a former decision, as he understood it, to disallow this item as a part of the value of the physical property. The officers charged with the management of the company deemed it necessary to make these purchases in order to properly conduct its business and to protect its property. The water distributed by the company is pumped from the earth, and it was necessary to secure a proper drainage area which would place its supply beyond any liability of failure or contamination and to prevent others from interfering with it, and to provide for the present and probable future needs of the company. Landowners were claiming that drawing the water from the earth injured the farming value of their land, and suits were pressing for damages and injunctions. The city of New York

was adopting plans which, if carried out, would have encroached upon the company's drainage area, and, as its engineers and officers felt, would have been destructive to its interests. The relator produced expert witnesses upon the trial who swore that all this land was necessary properly to protect the drainage area of the company. The referee found that it was wise and prudent for the relator to own these lands. Its motive in making the purchase is not questioned. The facts which led up to these purchases appear more fully now, and render the former decision not controlling upon the present record. A water company can only act through its officers. Whether the business is profitable or unprofitable depends in part upon the plant and its location, but to a great extent upon the wisdom and business capacity of the officers managing it. I think it is generally acknowledged that the personal equation has much to do with the success of any business, and that a mere plant alone will not bring success, but the requirement of success is a proper plant, properly managed.

The law creating the Board of Tax Commissioners does not make it the manager of the relator's business, nor require that its business should be run according to the judgment of the board; the management of the business is left entirely with the officers of the company. The duty of the board is solely to determine the value of the property as a going concern.

If, in assessing the value, the net-earnings rule is applied, the business of the company as conducted must be considered, in so far at least as it is conducted in good faith, with fair intelligence and reasonably within bounds. Clearly the company cannot load itself up with useless property for the purpose of avoiding payment of its just taxes. It is also equally clear that for the purpose of increasing the tax the board cannot refuse to consider property as a part of the plant which the company, in its judgment, purchased in good faith for the use of and is using in the company's business. The managers of this business deemed it necessary for the business to own this land; there is at least a reasonable question if its ownership was not proper and necessary for the company; the finding is that the business was well managed. Perhaps it might have been managed by some other people in a better way; but in determining whether the business is or is not profitable the results flow from the plant and the business management. I am satisfied that this land having been bought and used solely for the business of the company, and without any other purpose, should be treated as a part of the plant, and its value considered in determining the return to be received from the property.

This is not a case of abandoned property, or property which had outlived its usefulness to the company. It was bought because the company believed it necessary for its use, and it was in fact being used for the very purpose for which it was bought. Opinion, perhaps, might vary with reasonable men as to whether the company did not have too large an engine or too many engines; too large a pump or too many pumps; too expensive an office or too extensive a drainage area. But all of these matters, within reasonable bounds, were for the company to decide, and have in good faith been determined by it.

Its managers determined a matter in which they were vitally interested, and in the direct line of its business, and perhaps their judgment upon such a question is better than that of the Tax Commissioners or of the court. They determined the matter according to their best judgment and in the best interest of the company, as they understood it. They paid the company's money for the property in the belief that it was a necessary part of the plant. That judgment, so arrived at, should not now be overruled upon technical grounds for the sole purpose of enhancing the taxation of the company.

[7] In owning this land as a part of its watershed and for the protection of its water supply the company could not allow it to grow wild and to become unsightly. To do so would be a poor advertisement for a water company. It cannot be criticised for keeping its land in proper condition and properly mowed. There was no experimental farming attempted, but the company owning this land as a part of its plant sought to keep it sightly, and it used the hay growing upon it for the use of its horses. It cost more each year to do this than the actual earnings from the land itself as land. There is no suggestion that the expenses were made for any other purpose than for the reasonable protection of the property of the company and to keep it from becoming unsightly and detrimental to the interests of the company. This expense should be allowed as an expense of the business.

[8] In determining the net profits for the year 1904 the taxes which had been levied for that year were disallowed because not yet paid. This was error.

[9] When the pipes were laid in certain streets they were unpaved, and afterwards the city paved the streets. In determining the reproductive cost of laying the pipes in those streets the cost of relaying the pavement was not allowed as a part of the reproductive value. We think it should have been. The fact that the paving cost the company nothing is immaterial.

We are satisfied with the order with reference to the other matters presented upon this appeal. The cost of engineering and of necessary supervision are also necessary items for consideration.

The order appealed from is therefore reversed, the determination of the Tax Commissioners annulled, and the matter remitted to them for further consideration, without costs. All concur.